Roberto and Maria
FRASSETTO, Appellants,

v.

Marion A. BARRY, Jr., et al.,
Appellees.

No. 83–1258.

District of Columbia Court of Appeals.
Argued April 23, 1985.
Decided Aug. 19, 1985.

James E. Burk, Washington, D.C., with whom Thomas Holcomb, III, Washington, D.C., was on the brief, for appellants.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, Charles L. Reischel, James R. Murphy, Deputy Corp. Counsels, Richard L. Aguglia, and Katherine V. Kelley, Asst. Corp. Counsels, Washington, D.C., were on the brief, for appellee District of Columbia.

Margaret A. Beller, Washington, D.C., for appellees Robinson.

Leonard C. Collins, Washington, D.C., filed a brief on behalf of William Reese, William Stith, Dorothy Speaks, James E. Joyner and Richard Stark, amici curiae.

Before PRYOR, Chief Judge, and FERREN and BELSON, Associate Judges.

FERREN, Associate Judge:

Appellants Frassetto challenge the validity of the tax deed conveying their property to appellees Robinson. The Frassettos assert that the tax deed is void because the District of Columbia Department of Finance and Revenue (DFR) failed to comply strictly with statutory and due process requirements that DFR use procedures reasonably calculated to apprise them of their tax liability and of the tax sale; conduct the tax sale "at the office of the ... collector of taxes [District of Columbia Treasurer]," D.C. Code § 47–1001 (1973);[1] and file a written report of the tax sale, within 20 days, with the Recorder of Deeds, D.C. Code § 47–1006 (1973).[2] The Frassettos further complain of DFR's failure to apprise them that DFR, in mailing the required real estate tax notices, uses the mailing address a new purchaser of realty is asked to provide on the District's recordation tax form.

We agree that DFR has failed to establish that it filed a timely report of the tax sale with the Recorder of Deeds, pursuant to D.C. Code § 47–1006 (1973), and thus has not acted in " ' "strict compliance" with the tax sale statute ....' " *Robinson v. Kerwin*, 454 A.2d 1302, 1305 (D.C.1983) (as modified) (citations omitted). Accordingly, we reverse and remand for voidance of the tax deed. In view of this ruling, we need not reach appellants' other assertions of error.

I.

In July 1975 the Frassettos purchased unit 233 in the Cathedral Park Condominium, located at 3100 Connecticut Avenue, N.W. At the time, they lived and worked in Italy and had never purchased property in the United States, although they later purchased two other condominiums, one of which was located in the same building as unit 233. After purchasing unit 233, the Frassettos employed Joel Truitt to manage the property and, since 1975, rented it out through Truitt to a succession of tenants. Truitt was authorized to collect the rental payments on the Frassettos' behalf and to pay all expenses for the three units, including property taxes.

The Frassettos were required to complete form "FP–2" upon purchase of unit 233. This form, entitled "District of Columbia Real Estate Deed Recordation Tax Return," must be filed with any deed presented for recordation and is evidence that the recordation tax has been paid. The form provides a space for the grantee to fill in his or her name and "mailing address." DFR uses this information for the mailing address to which all notices regarding real estate taxes are sent. The Frassettos testified that they did not see the blank space for a mailing address on the form and, in any event, that they were not informed or otherwise aware that this address was to be used for mailing tax notices. Without filling in this information, appellants signed the form and mailed it to the grantor, who apparently signed

---

1. Recodified as D.C.Code § 47–1301 (1981 & Supp.1984).

2. Recodified as D.C.Code § 47–1307 (1981).

and forwarded the form to the District. At some point, an unknown person completed this form, adding the Frassettos' mailing address as "# 233–3100 Connecticut Ave., N.W."

DFR began sending tax notices to the Frassettos at this address. Property taxes apparently were paid on unit 233 for tax years 1975 and 1976, but the Frassettos failed to pay the taxes for 1977, 1978, 1979 and 1980. In December of each of these years, the property was advertised in local newspapers for sale, for nonpayment of taxes, the following January.[3]

On January 20, 1978, appellees Robinson purchased a tax sale certificate on unit 233. In accordance with D.C. Code § 47–1005 (1973),[4] DFR mailed, on December 1, 1979, a notice of expiring redemption to the Frassettos at 3100 Connecticut Avenue, Northwest, Apartment 233, advising them of their right to redeem the property by payment of back taxes by January 21, 1980.[5] The Frassettos failed to respond. On April 15, 1980, the Robinsons received a tax deed to the property.

## II.

### A.

■ At the time, sales of real property to compensate the District for delinquent taxes were regulated by D.C. Code §§ 47–1001 through –1018 (1973).[6] That statute, which is substantially the same as the one in force today, see supra note 6, permitted the District to sell real property for which back taxes are owed. Id. § 47–1001. The District's power to sell real property in satisfaction of delinquent taxes, however, is subject to various notice requirements.

The statutory and regulatory provisions required that—for example—for the 1977

taxable year (July 1, 1976–June 30, 1977), the District, no later than March 1, 1976, had to notify by mail each owner of taxable real property of the assessed value of the property (as of January 1, 1976), which would serve as the basis for the real property tax for 1977. Reg. 74–35, § 112, 21 D.C.Reg. 1650–51 (1975); see D.C. Code § 47–1001a (1973); 1776 K Street Associates v. District of Columbia, 446 A.2d 1114 (D.C.1982). Tax bills for 1977 were then to be mailed twice yearly, in September 1976 and in March 1977, each for half the amount due. Reg. 74–35, § 116(a), supra, at 1652. If back taxes were owed, each tax bill was to alert the owner to this fact. D.C.Code § 47–1001a; Reg. 74–35, § 116(b), supra, at 1653. Additionally, the District was required to mail separate "delinquency notices" by July 1, 1977 (for 1977 taxes unpaid after March 31) and again by December 1, 1977 (for 1977 taxes still unpaid). Reg. 74–35, § 117, supra, at 1653. The second delinquency notice, usually mailed in October, had to advise the owner that, unless arrearages were paid, the property would be advertised in December for the next scheduled tax sale, id., typically held a month later in January.

At least three weeks before the sale, the District was required to advertise a list of all tax delinquencies and a notice of the sale of these properties in two major daily newspapers. D.C. Code § 47–1001 (1973); Reg. 74–35, § 119, supra, at 1653–54. A purchaser at the tax sale would then receive a provisional certificate of sale. D.C. Code § 47–1003 (1973); Reg. 74–35, § 124, supra, at 1655. Within twenty days after the sale, the collector of taxes (i.e., the District of Colubmia Treasurer) was required to file a written report with the Recorder of Deeds "describing each property sold, ... the tax and penalty and other

---

3. The 1978 advertisement published the Frassettos' lot number out of numerical sequence. The 1979 advertisement listed the wrong lot number.

4. Recodified as D.C.Code § 47–1306 (1981).

5. The Frassettos, who were in Italy throughout this period, claim that neither they nor Joel

Truitt, the property manager, ever received this notice or any of the tax bills and delinquency notices previously sent.

6. Recodified as D.C.Code §§ 1301–1319 (1981 & Supp.1984). These provisions are substantially unchanged.

charges due, the name of the purchaser, the sale price, the date on which the property was sold, the costs of sale involved, and the surplus bid for the property, if any." Reg. 74-35, § 125, *supra*, at 1655; *see* D.C. Code § 47-1006 (1973).[7]

The record owner of the property had two years after the sale within which to redeem the property by paying the District Treasurer, for use of the purchaser, the amount of back taxes owed plus penalties, costs, and interest. *Id.* § 47-1005. At least thirty days before the expiration of this redemption period, the District was required to notify the record owner, by certified or registered mail, of the final date by which the property could be redeemed. Reg. 74-35, § 126, *supra*, at 1655; *see* D.C. Code § 47-1012 (1973). If the owner failed to redeem the property within the prescribed time, the District would issue a tax deed to the purchaser upon payment of all taxes and other charges accrued to date. *Id.* § 47-1003; *see generally Robinson v. Kerwin,* 454 A.2d at 1303-04.

### B.

At trial, the Frassettos alleged numerous failures by the District to comply with the statutory requirements. They complained that the District had not fulfilled its obligation to assure that the tax bills and related notices concerning delinquencies, tax sales, and redemption (which they allegedly did not receive) were sent to an address reasonably calculated to notify them of their liabilities and the action to be taken against their property. As to these issues, the trial court ruled for the District.

We need not address these trial court rulings because the Frassettos also presented uncontradicted testimony that the District had failed to comply with the § 47-1006 tax sale recordation requirement. Henry M. Turrell, Deputy Recorder of Deeds, testified that his office had been unable to locate any written reports "evidencing recording of [tax] sale[s] [by] the District of Columbia for the years 1977, 1978 [and] 1979 required to be filed with the Recorder of Deeds pursuant to § 125" of the regulations. *See* D.C. Code § 47-1006 (1973); Reg. 74-35, § 125, *supra*, at 1655. The trial court accepted Turrell's testimony, finding that the District "has no records ... which would establish whether or not written reports of tax sales had been filed with the Recorder of Deeds." The court nonetheless concluded:

The failure, if any, with regard to filing a written report of the tax sale with the Recorder of Deeds pursuant to 47 D.C. Code § [1006] is immaterial. Section [1006] is not part of the scheme of protections for the property owner. Rather, § [1006] and the implementing regulations are part of a statutory scheme for distributing and accounting for any surplus which may be due to the legal holder of the certificate for the tax sale if and when the property is redeemed. *Cf. Robinson v. District of Columbia,* 372 A.2d 1005, 1009 (D.C.App.1977).

---

7. D.C.Code § 47-1006 (1973) provided in relevant part:

**Report of tax sale to be filed with recorder of deeds—Disposition of surplus on redemption.**

The collector of taxes [District of Columbia Treasurer] shall, within twenty days ... after the last day of the sale hereinbefore provided for as aforesaid, file with the recorder of deeds a written report, in which he shall give a statement of the property sold, ... the taxes due, to whom sold, the amount paid, the date of sale, the cost thereof, and the surplus, if any. Any surplus remaining after the collection of taxes, penalties, and costs on any real estate shall be collected as hereinbefore provided for, and shall be deposited by the collector of taxes [Treasurer] to the credit of the surplus fund, to be paid to the owner or owners, or their legal representatives, in the same manner as other payments made by the District....

Similarly, D.C.Code § 47-1010 (1973) required the Director of DFR (formerly the Assessor) "to prepare and keep in his office, for public inspection, a list of all real estate ... sold" for nonpayment of taxes, including the date of sale, name of the record owner, the amount of the sale, and information about redemption or conveyance by tax deed. In contrast with § 47-1006, § 47-1010 prescribed no timetable for recording this information for use by the public.

Appellees essentially adopt the trial court's reasoning. The Frassettos and amici disagree. They argue that, although the required filing with the Recorder of Deeds may indeed furnish the basis for allocating proceeds of tax sales, *see Robinson v. District of Columbia*, 372 A.2d at 1009, this written and recorded report also is intended, significantly, to serve as notice to the world—including the record owner—that a tax sale has taken place.

They point out, more specifically, that the office of the Recorder of Deeds is the public repository for all land records and that Congress, in selecting that office as the filing situs, must accordingly have intended that the required recording of tax sale reports serve a public notice function. They note that the District is required to file § 47–1006 reports shortly after the tax sale is held, early in the period of redemption when the record owner retains the right to avoid a final conveyance of his property by paying the delinquent tax bill. Such timely notice may be significant to the owner, they say, for in the event that—as alleged in this case—the owner failed to receive a mailed notice of delinquency and impending tax sale, or to see a tax sale advertised in a local newspaper, an inspection of the public record at the Recorder of Deeds' office may be the only practical way, or at least the most certain way, for the owner to learn that a tax sale has taken place and to redeem the property in time.[8] Furthermore, if a record owner wishes to convey property, that owner, as well as the prospective purchaser, cannot be sure of clear title unless the parties can rely on the land records at the Recorder's office to confirm either that no tax sale has taken place or that the property has been sold for delinquent taxes but is subject to redemption before issuance of a tax deed.

In short, according to the Frassettos and amici, the elaborate personal notice and public advertising requirements are not the only notice requirements with which the District must strictly comply; the recordation requirement is an equally significant provision enacted to protect—in the event all other notice fails—a record owner's ability to retain and, if desired, to convey the property free and clear.

### C.

We have repeatedly warned that, " 'in order to guard against the deprivation of property without due process of law,' ... the District may effect a valid conveyance of property for nonpayment of real estate taxes only by 'strict compliance' with the tax sale statute and regulations." *Boddie v. Robinson*, 430 A.2d 519, 521–22 (D.C. 1981) (quoting *Potomac Building Corp. v. Karkenny*, 364 A.2d 809, 812 (D.C.1976) (per curiam), *cert. denied*, 431 U.S. 921, 97 S.Ct. 2192, 53 L.Ed.2d 234 (1977)); *accord Robinson v. Kerwin*, 454 A.2d at 1306; *Watson v. Scheve*, 424 A.2d 1089, 1092 (D.C.1980); *Shenandoah Corp. v. Pringle*, 385 A.2d 748, 749–50 (D.C.1978); *Coleman v. Scheve*, 367 A.2d 135, 138 (D.C.1976). In 1819, Congress imposed a requirement that written reports of tax sales be filed with the Recorder of Deeds. Act of Feb. 20, 1819, ch. 35, § 2, 3 Stat. 486; *King v. District of Columbia*, 11 D.C. (MacArth. & M.) 36, 40 (1879). The current version was passed in 1898, An Act In Relation to Taxes and Tax Sales in the District of Columbia, ch. 32, § 5, 30 Stat. 252 (1898), and amended in minor respects in 1902. Ch. 1358, § 5, 32 Stat. 635 (1902).

Although this court has never had occasion to address the District's failure to comply with § 47–1006, the predecessor of the United States Court of Appeals for the District of Columbia Circuit confronted this very issue shortly after the most recent amendments to the statute. In *Kann v.*

---

**8.** Amici acknowledge the other public notice provision, D.C.Code § 47–1010 (1973), *supra* note 7, but point out that this provision does not necessarily afford the timely notice required by § 47–1006, let alone substitute for the notice traditionally provided—and relied upon—in the land records at the Recorder's office for purposes of checking titles to real property. Nor do appellees rely on § 47–1010 to undercut the legal significance of § 47–1006.

*King,* 25 App.D.C. 182 (1905), *rev'd on other grounds,* 204 U.S. 43, 27 S.Ct. 213, 51 L.Ed. 360 (1907), the court declared a tax sale certificate and subsequent deed "null and void" because the District had failed to file a written report of the tax sale with the Recorder of Deeds. *Id.* at 187–88. In so ruling, the court concluded:

> The purpose of [§ 47–1006] is very plain. It was to give further and explicit notice to the citizen whose property was affected and was about to be taken from him, to warn him of his danger, and to give ample information as to what was required to be done in order that he might relieve his property from its predicament. Under this act he is entitled to have all the details of the statute strictly complied with; and a failure of such compliance may suffice to vitiate all the subsequent proceedings.

*Id.* at 186.

■ We conclude that *Kann* is dispositive of this issue.[9] *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). Unless there is sufficient evidence that the terms of § 47–1006 (now § 47–1307) were strictly followed here, the sale of the Frassettos' property by the District must be declared void. *Cf. Boddie v. Robinson,* 430 A.2d at 521–22, 523 (tax deed void when DFR improperly addressed notice of expiring redemption).[10]

## III.

■ Although no evidence was adduced at trial that the District had, in fact, filed a report of the tax sale with the Recorder of Deeds—indeed, the only evidence was to the contrary—Corporation counsel have, on appeal, proffered a copy of a document apparently located after trial. The District asks us to take judicial notice of this document, citing *Reiner v. Washington Plate Glass Co.,* 229 U.S.App.D.C. 136, 138, 711 F.2d 414, 416 (1983). DFR filed this document (which the District terms an "annual report") with the Recorder of Deeds; it lists all properties sold for delinquent taxes between January 17 and January 20, 1978. This report, however, merely lists, in column form, each property sold, the record owner, date of sale, amount of taxes due, and other charges assessed. There is no indication of the date on which DFR filed the report with the Recorder of Deeds. Even assuming that we could properly take judicial notice of this report on appeal, we conclude that appellees have failed to demonstrate that it was filed "within twenty days ... after the last day of the sale ...." D.C.Code § 47–1006 (1973).

■ Although a tax deed is "held to be prima facie evidence of a good and perfect title," [11] D.C.Code § 47–1003, the Frasset-

9. We note that the Supreme Court and District of Columbia courts had long required strict compliance with the statutory predecessors to § 47–1006. *See Beale v. Brown,* 17 D.C. (6 Mackey) 574, 579 (1888) ("[T]his requirement is an essential ingredient to any tax title, and unless it has been complied with, any tax deed taken by a party is void."), *aff'd mem.,* 149 U.S. 766, 13 S.Ct. 1043, 37 L.Ed. 960 (1892); *King v. District of Columbia,* 11 D.C. at 41 ("The object of requiring this report to be made to the recorder, and requiring a record thereof to be made among the land titles of the District, is very obvious. It was to give the world notice of sales of lands for unpaid taxes."). *Cf. Ronkendorff v. Taylor's Lessee,* 29 U.S. (4 Pet.) 349, 359, 7 L.Ed. 882 (1830), ("[G]reat strictness is required" of District in complying with tax sale statutes. "To divest an individual of his property, ... every substantial requisite of the law must be shown to have been complied with."); *Corporation of Washington v. Pratt,* 21 U.S. (8

Wheat.) 681, 683, 5 L.Ed. 714 (1823) ("Where [tax sale statutes] are explicit and consistent, there is no ground for adjudication but their literal meaning. That they must be construed strictly, follows from their affecting private rights, and particularly rights of freehold."). *But see Rowlett v. Nash,* 38 App.D.C. 598, 604 (1912) (construing Act of March 3, 1877).

10. During debate in the House of Representatives on H.R. 2283, 55th Cong., 2d Sess. (1898), the bill which ultimately was enacted by both Houses of Congress, the legislators evinced a strong concern that the District strictly comply with the various provisions. *See* 31 Cong. Rec. 939–40 (1898) (remarks of Rep. King, Rep. Jenkins).

11. See also the remarks of Rep. Jenkins, sponsor of H.R. 2283, *supra* note 10, during debate on this bill in the House of Representatives:

tos adequately rebutted this presumption through the introduction of Henry Turrell's testimony at trial. We conclude that, the burden of production having shifted to appellees, the proffered report, even now, is insufficient to establish compliance with § 47–1006. *See also Bursey v. Lyon*, 32 App.D.C. 231, 240 (1908) ("Even where a statute makes a tax deed prima facie evidence of the regularity of the proceedings, it has been held that such a statute does not dispense with the performance of all the requirements of the law prescribing how land may be sold for taxes.")

Accordingly, we reverse and remand the case to the trial court for entry of an order voiding the tax sale of unit 233, Cathedral Park Condominium, to appellees Robinson.

*Reversed.*

"[T]he burden rests upon the man claiming against the deed to show that the law has not been sufficiently complied with." 31 Cong. Rec. 939 (1898).