**James D. KEATTS, et al., Appellants,**

v.

**Jack ROBINSON, et al., Appellees.**

No. 86–170.

District of Columbia Court of Appeals.

Argued April 15, 1987.

Decided July 25, 1988.

Jeffry A. Kappstatter, for appellants.

Margaret A. Beller, Washington, D.C., for appellees Jack Robinson, Thomas Robinson, and William Robinson.

Richard G. Amato, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, Richard L. Aguglia, Deputy Corp. Counsel, and Julia L. Sayles, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees Marion Barry and the District of Columbia.

Before NEWMAN, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

James Keatts, a resident of Maryland, failed to pay the taxes on a parcel of District of Columbia real estate that he owned along with two other investors. To satisfy the tax delinquency, the property was sold at a public auction to Jack, Thomas, and William Robinson, who received a tax deed from the District of Columbia after the statutory waiting period had expired. Keatts and his co-investors then filed suit against the Robinsons and the District (and its Mayor) to set aside the tax deed. After a non-jury trial, the court ruled that the tax deed was valid and entered judgment for the Robinsons, the District, and Mayor Barry. Keatts and his co-investors now appeal from that judgment, presenting three claims of error. We hold that two of them are without merit, but that the third requires a remand for additional findings of fact by the trial court.

I

From 1973 to 1976 Keatts lived in Chevy Chase, Maryland. Throughout that period he was part-owner of a piece of property located at 500 Florida Avenue, N.W., in the District of Columbia. All tax notices for this property were sent to Keatts at his home in Chevy Chase.

When Keatts moved to Crofton, Maryland, in November 1976, he filed a change of address form with the post office. In March 1977 Keatts received a bill, which had been forwarded from Chevy Chase to Crofton, for taxes due on the Florida Avenue property. He testified at trial that when he sent a check in payment of these taxes, he enclosed with the check a written notice of his new address, and also wrote the new address on the envelope.

But Keatts never received another bill for taxes on the Florida Avenue property. At trial he explained that he was unconcerned about this because he thought his real estate agent was paying the taxes. However, the Department of Finance and Revenue (DFR) apparently continued to mail tax bills to Keatts' Chevy Chase address.[1] As a result, Keatts never paid the taxes for the second half of the 1978 tax year, and the property was sold at a public tax sale in January 1979. The Robinsons bought it for $478.

Although Keatts never received any tax bills at his Crofton address, he did receive other correspondence there from the DFR. Less than one month after the tax sale, the DFR sent him an "Income–Expense Form," a document which is sometimes used by the DFR to determine property taxes. The computer-printed address on the form was Keatts' outdated one in Chevy Chase, but the Crofton address was handwritten on the side. The form and its attachments were enclosed in an envelope which bore Keatts' Crofton address.

After the tax sale, Keatts and his co-owners had two years to redeem the property by paying all back taxes, penalties, and other costs. D.C. Code § 47–1005 (1973).[2] Shortly before the expiration of the two-year period, the DFR mailed

---

1. Although the actual bills were not produced at trial, Alfred Richards, Chief of the Assessment Services Division of the DFR, testified without objection that tax bills and delinquent tax notices would have been sent to the Chevy Chase address in the normal course of business.

2. The 1973 code provisions governing real property tax sales have been recodified, with minor changes, as D.C.Code §§ 47–1301 through 47–1319 (1981 & 1987 Repl.). Since all of the pertinent events in this case occurred between 1976 and 1979, however, we shall cite the applicable 1973 Code sections throughout this opinion.

Keatts a notice that his right of redemption would soon terminate. Unfortunately, this notice was also mailed to Chevy Chase, and the post office returned it to the DFR because Keatts' forwarding notice had expired. Mr. Richards, the DFR assessment chief, testified that when mail such as this is returned, personnel in his division customarily look in the District of Columbia, suburban Maryland, and suburban Virginia telephone directories to locate the owner's address. In this instance, however, no such address was found,[3] and the notice was simply remailed—to Chevy Chase. The redemption period then expired, and the District issued a tax deed to the Robinsons.

In the trial court appellants attacked the validity of the tax deed on three grounds. First, they claimed that the DFR had failed to send tax notices to Keatts' last known address as recorded in the real estate assessment records. *See* Regulation 74–35, § 112(c), 21 D.C. Reg. 1651 (1975). They emphasized that Keatts had sent the DFR a written notice of his Crofton address, and that he had even received correspondence from the DFR at his new home. Furthermore, appellants produced an undated DFR mailing list entitled "Income–Expense Form Listing," on which Keatts' Chevy Chase address appeared in computer print, but the Crofton address was handwritten underneath it along with the notation "New Address."

Appellants next argued that the District had failed to file with the Recorder of Deeds a written report of the tax sale within twenty days, as required by D.C. Code § 47–1006 (1973). In counting the twenty-day period, appellants excluded only Sundays and legal holidays. A DFR regulation, however, permits Saturdays to be excluded as well because, by Act of Congress, the Recorder's Office is closed for business on Saturdays. Regulation 74–35, *supra*, § 125, 21 D.C. Reg. at 1655. Appellants concede on appeal that if Saturdays were properly excluded from the twenty-day period, the report was timely filed.

Finally, appellants asserted that the Robinsons did not pay for the property within the statutorily prescribed time. The Robinsons had purchased several other properties at the January 19 tax sale for a total price of $129,355.30, which they paid in two installments. The receipt for the second installment was dated January 25, 1979, although another marking on the receipt indicated that payment had been received on an earlier date. D.C. Code § 47–1003 (1973) requires that the full purchase price be paid within five days of the tax sale, so that payment had to be made by January 24.

The trial court upheld the validity of the tax deed. It found that appellants had not sustained their burden of proving that Keatts changed his address for the purpose of receiving tax notices (his "record address"), and that a change made to the mailing list for Income–Expense Forms "does not constitute a change in record address of the property owner." The court also ruled that it was proper not to include Saturdays in the twenty-day filing period because D.C. Code § 47–1006 (1973) "must be interpreted to allow twenty (20) business days within which to file the report of sale ... exclusive of Saturdays, Sundays and holidays." Finally, the court found, the purchase price was paid on January 24 and was therefore timely, since the receipt for that payment (dated January 25) stated on its face that payment had been "received prior to validation date."

## II

The District of Columbia must jump through several procedural hoops before it may sell real property for delinquent taxes. Before the beginning of every fiscal year, the District must inform owners of the assessed value of their property. Regulation 74–35, *supra*, § 112(a), 21 D.C. Reg. at 1650–1651. The property taxes are then computed from the assessed value, and bills are sent semi-annually to the owners.

---

**3.** The suburban Maryland directories cover only Montgomery and Prince George's Counties, the two counties which border on the District of Columbia. Crofton, however, is in Anne Arundel County, which is east of Prince George's County and does not border on the District.

The bills must also inform the owners of any back taxes still owed. D.C. Code § 47–1001a (1973); Regulation 74–35, *supra,* § 116, 21 D.C.Reg. at 1652–1653. If any owner fails to pay his or her property taxes, the District must send that owner a delinquency notice, *id.* § 117, 21 D.C.Reg. at 1653, and must also advertise in two daily newspapers that the property will be sold at public auction. D.C. Code § 47–1001 (1978 Supp.); Regulation 74–35, *supra,* § 119, 21 D.C.Reg. at 1653–1654. After the property is auctioned off, a written report summarizing the terms of the sale must be filed within twenty days in the office of the Recorder of Deeds. D.C. Code § 47–1006 (1973). The owner then has two years to redeem the property by paying the back taxes plus other costs. D.C. Code § 47–1005 (1973). At least thirty days before the expiration of the two-year period, the owner must be notified of his or her right of redemption. Regulation 74–35, *supra,* § 126, 21 D.C.Reg. at 1655. If the owner fails to redeem, a tax deed is issued to the person who purchased the property at the public auction. D.C. Code § 47–1003 (1973); *see Frassetto v. Barry,* 497 A.2d 109, 111–112 (D.C.1985).

It is well settled that the District must satisfy every procedural requirement leading up to the issuance of a tax deed. "[T]he District may effect a valid conveyance of property for nonpayment of real estate taxes only by 'strict compliance' with the tax sale statute and regulations." *Boddie v. Robinson,* 430 A.2d 519, 522 (D.C. 1981) (citations omitted); *accord, Frassetto v. Barry, supra,* 497 A.2d at 113. Strict compliance is required "in order to guard against the deprivation of property without due process of law." *Potomac Building Corp. v. Karkenny,* 364 A.2d 809, 812 (D.C.1976) (citations omitted), *cert. denied,* 431 U.S. 921, 97 S.Ct. 2192, 53 L.Ed.2d 234 (1977). If the District fails to comply in every respect with the statute

and regulations, the sale is invalid and must be set aside. *See Boddie v. Robinson, supra,* 430 A.2d at 522–523.

When the validity of a tax sale is challenged, however, the court in which the challenge is brought must view the tax deed as "prima facie evidence of a good and perfect title in fee simple to any property bought at said sale...." D.C. Code § 47–1003 (1973). Consequently, the plaintiff bears the burden of producing evidence that the deed was improperly issued. Once such evidence is presented, the burden of production shifts to the defendant, who must then demonstrate that the tax sale was valid. *Frassetto v. Barry, supra,* 497 A.2d at 114–115.[4]

In the present case, appellants maintain that the District did not comply with the requirement of mailing tax bills to "the last known address of the property owner as recorded in the real estate assessment records of the District." Regulation 74–35, *supra,* § 112(c), 21 D.C.Reg. at 1651. According to appellants, the DFR was aware that Mr. Keatts' correct address was in Crofton, but it continued to send tax bills and other notices to the outdated Chevy Chase address. In light of this evidence, they argue that the trial court could no longer regard the tax deed as prima facie evidence that the tax sale was valid, and that the court therefore erred in not shifting the burden of production to appellees.

There were three items of evidence before the court which supported appellants' claim: (1) Keatts' testimony that he had mailed to the DFR a written notice of his change of address; (2) the Income–Expense Form which the DFR sent to Keatts' Crofton address; and (3) the handwritten notation of his new address on the DFR's Income–Expense Form Listing. Appellees countered this evidence by attacking Mr. Keatts' credibility and by presenting testi-

---

4. In *Frassetto* this court considered a claim that the District had not filed a written report of a tax sale within twenty days, as required by D.C. Code § 47–1006 (1973). Although agency documents submitted after trial showed that a report had indeed been filed, there was no evidence that it had been filed within the twenty-

day period. We therefore held that the plaintiff had "adequately rebutted" the presumption that the sale was valid, and that the District's evidence was "insufficient to establish compliance with § 47–1006." 497 A.2d at 115 (citation omitted).

mony from Mr. Richards, a DFR official, that a change of address for receiving an Income–Expense Form did not change the record address for receiving tax bills and delinquency notices.

The trial court, in its findings of fact, pointed out several flaws and weaknesses in Keatts' testimony. For example, although Keatts never notified the DFR to send the tax bills to his real estate agent, he testified that he believed the agent was handling all tax payments. Keatts then acknowledged that, contrary to his expectations, the real estate agent did not pay the taxes or change the record address, but Keatts also maintained that he had sent his new address to the DFR himself. In addition, Keatts somehow overlooked the fact that the taxes were not being paid on the property, even though he received monthly income and expense statements from his agent.

In contrast, Mr. Richards of the DFR testified that a change of address for receiving an Income–Expense Form did not effect a change in the property owner's record address. Richards explained that hundreds of accountants and lawyers continually request the DFR to send these forms to them rather than to their clients, the actual property owners. When such requests are received, the record address of the property owner is not changed. Reviewing the Income–Expense Form Listing, Richards concluded that the handwritten notation of the Crofton address did not reflect a change in the record address; its only purpose was to indicate that an Income–Expense Form should be sent to Crofton.[5] This conclusion is supported by Keatts' own testimony that he received an Income–Expense Form, but no other tax notices, at his Crofton address. Richards also pointed out that, on the Income–Expense Form sent to Crofton, Keatts' Chevy Chase address appeared in computer print, whereas the Crofton address was simply handwritten on the form and typed on the envelope. According to Richards, this indi-

cated that Keatts' record address had never changed from Chevy Chase to Crofton.

Without making any express credibility rulings, the court found that appellants had "not carried their burden of proof" on the issue of whether Keatts "had given a notice of change of address along with his payment of the taxes on this property in March 1977...." But that was not the only issue which the court had to decide. In *Robinson v. Kerwin*, 454 A.2d 1302 (D.C.1982), we reversed a directed verdict and remanded a similar case to the trial court, concluding that there was an unresolved issue of fact as to whether the DFR knew, or should have known, that the property owners had moved to a new address, which would make its mailings to the old address "inadequate to provide the notices required by [statute]." *Id.* at 1306. We held:

> The outcome on remand, therefore, will turn on the respective duties of the District and the property owner to update real estate records to include an accurate mailing address for the owner.... [T]he trial court must determine whether the Department nonetheless has a duty to check its own records for evidence of a taxpayer's correct address. To resolve this question, the trial court must balance the burden that such a procedure would place on the District against the reasonableness of a taxpayer's expectation, unless otherwise informed, that the Department has the correct address for all purposes if the Department mails some notices to the proper address.

*Id.* at 1307 (footnote omitted). The same issue is presented in this case: whether the DFR "has a duty to check its own records for evidence of a taxpayer's correct address." In deciding this issue, the trial court on remand must engage in the same balancing process which we described in *Kerwin*, weighing the burden on the DFR against the reasonableness of appellants' expectation, unless otherwise informed, that the DFR had the correct address for

---

5. Asked by the Robinsons' counsel to explain the significance of the handwritten address "in light of [his] own knowledge and experience," Richards replied, "I don't think that anybody in our place ever felt that that was a permanent change of address."

all purposes when it mailed the Income–Expense Form to Keatts' Crofton address. The results of that balancing process will determine the outcome of this case, just as it did in *Kerwin*. [6]

### III

Independently of their adequacy-of-notice argument, appellants press upon us two additional assignments of error. We must address them both because, if either of them were meritorious, appellants would be entitled to judgment as a matter of law, and the remand which we have ordered in part II of this opinion would not be necessary. We hold that neither of these additional arguments provides any basis for reversal.

### A

■ First, appellants maintain that the District failed to file the required written report of the tax sale within twenty days. The foundation of their argument is the assertion that, in calculating the twenty-day period, only Sundays and legal holidays should be excluded. They rely on D.C. Code § 47–1006 (1973), a statute enacted in 1902, which states in part: "The collector of taxes shall, within twenty days, exclusive of Sundays and legal holidays, after the last day of the sale ... file with the recorder of deeds a written report...." According to appellants, the twenty-day limit was exceeded in this case because the tax sale took place on Friday, January 19, and the report was not filed until Friday, February 16.[7]

We hold that, in light of a more recently enacted statute, appellants' reliance on section 47–1006 is misplaced. Although in 1902, and for many years thereafter, the Recorder's office was open on Saturdays, Congress in 1946 enacted legislation closing it "on every Saturday" thereafter.[8] In the same act, Congress provided that if a recording period expired on a Saturday or a Sunday, the period was automatically extended to the next day that was not a Sunday or a legal holiday. Act of August 2, 1946, ch. 758, 60 Stat. 860 (codified at D.C.Code §§ 45–712 and 45–713 (1973); recodified at D.C.Code §§ 45–913 and 45–914 (1986)). This 1946 statute, however, did not clarify whether Saturdays were to be included in computing the twenty-day period for filing tax sale reports.

Therefore, when the DFR adopted regulations governing tax sales, there were two possible interpretations to give to the 1902 and 1946 enactments. On the one hand, the 1902 statute could be interpreted strictly, without reference to the 1946 statute, so that Saturdays were still counted in the filing period (except when the period ended on a Saturday), even though the Recorder's office was closed on Saturdays. Alternatively, a broader reading of the 1902 statute, in light of the 1946 statute, would support the conclusion that only business days were to be counted in a filing period, which would exclude Saturdays altogether from the twenty-day calculation. The DFR chose the latter interpretation. The pertinent regulation now provides that Saturdays as well as Sundays and legal holidays are *not* to be counted in the twenty-day

---

6. In *Kerwin* we also observed in a footnote:

   The trial record contains no evidence that any written notice was posted or provided to taxpayers concerning the proper way to change address records. The trial record is unclear as to whether the Department staff gave oral instructions to the taxpayers.

   454 A.2d at 1307 n. 13. The record in the *instant case*, six years later, is likewise devoid of evidence that the DFR provides any information to property owners as to how to effect a change in a record address. We think it would behoove the DFR, if it has not already done so, to establish procedures for the giving of such information, plainly and in writing, to property owners.

7. If Saturdays and Sundays are excluded from the calculation, February 16 is the twentieth day after January 19. If only Sundays are excluded, as appellants urge, February 16 is the twenty-fourth day after January 19.

8. The Office of the Recorder of Deeds was the last District of Columbia government office to close on Saturdays. It had been kept open on Saturdays in order to serve local banks and savings and loan associations. However, when Congress permitted those institutions to close on Saturdays, there was no longer any reason for the Recorder's office to stay open. *See* S.Rep. No. 1665, 79th Cong., 2d Sess. (1946); H.R.Rep. No. 2675, 79th Cong., 2d Sess. (1946).

filing period. Regulation 74–35, *supra,* § 125, 21 D.C.Reg. at 1655.[9]

Appellants forcefully contend that this regulation is invalid because it directly conflicts with the plain language of D.C.Code § 47–1006 (1973). We have often recognized that an agency's interpretation of a statute affecting its operations should be followed when it is reasonable, provided that it does not contravene the language or legislative history of the statute. *E.g., Tenants of 3039 Q Street, N.W. v. District of Columbia Rental Accommodations Commission,* 391 A.2d 785, 787 (D.C.1978). Nevertheless, when judging the reasonableness of an agency's interpretation, we must realize that the agency is sometimes trying to discern an overall statutory scheme. "When agency rulemaking serves the purposes of the statute, courts should refuse to adopt a narrow construction of the enabling legislation which would undercut the agency's authority to promulgate such rules." *United States v. Nova Scotia Food Products Corp.,* 568 F.2d 240, 246 (2d Cir.1977) (citations omitted); *see also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 132, 106 S.Ct. 455, 462, 88 L.Ed.2d 419 (1985) ("[f]aced with ... a problem of defining the bounds of its regulatory authority, an agency may appropriately look to the legislative history and underlying policies of its statutory grants of authority").

Applying these principles, we conclude that the DFR's interpretation of the 1902 and 1946 statutes, read together, is entirely reasonable. The obvious reason why Sundays and legal holidays were excluded from the filing period in the 1902 statute was that the Recorder's office was closed on those days. Therefore, when Congress decided in 1946 to close the office on Saturdays as well as Sundays, it was more than likely that Congress intended to exclude Saturdays from the twenty-day period for

filing written reports of tax sales. Even though the 1946 act did not specifically address the issue of the twenty-day period, the DFR could have reasonably concluded that this act implicitly amended the 1902 provisions. *See generally* 1A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 22.13 (4th ed. 1985); 82 C.J.S., *Statutes* § 252 (1953) (discussing implied amendments).[10] Alternatively, the DFR could have concluded that the 1946 statute was ambiguous as to Congress' intent and resolved that ambiguity by adopting the regulatory language quoted in note 9, *supra. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–845, 104 S.Ct. 2778, 2781–2783, 81 L.Ed.2d 694 (1984); *Hija Lee Yu v. District of Columbia Rental Housing Commission,* 505 A.2d 1310, 1312 (D.C.1986). In either event, we do not find "compelling indications that [the agency's interpretation] is wrong," *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (footnote omitted), and thus we must defer to it. *Chevron U.S.A., supra,* 467 U.S. at 844, 104 S.Ct. at 2782–2783; *Remin v. District of Columbia Rental Housing Commission,* 471 A.2d 275, 279 (D.C.1984); *Tenants of 3039 Q Street, supra,* 391 A.2d at 787.

We therefore hold that the trial court properly relied on Regulation 74–35, § 125, in interpreting D.C.Code § 47–1006 (1973). Excluding Saturdays, Sundays, and legal holidays, the court correctly determined that the report of the tax sale was timely filed with the Recorder of Deeds on the twentieth day.

**B**

■ Appellants' final argument merits little discussion. They maintain that the full purchase price for the property was not paid within five days of the tax sale, as required by D.C.Code § 47–1003 (1973). [Emphasis added.]

---

9. Regulation 74–35, § 125, provides in pertinent part:

Within twenty (20) days, *exclusive of Saturdays,* Sundays and legal holidays, after the last day of the tax sale, a written report shall be filed with the Recorder of Deeds describing each property sold....

10. "An implied amendment is an act which purports to be independent, but which in substance alters, modifies, or adds to a prior act." 1A SUTHERLAND, *supra,* § 22.13, at 212 (footnote omitted).

Appellants claim that payment was due on January 24, 1979, and that the last payment was not made until January 25, as evidenced by a receipt stamped with the latter date.

This argument simply ignores another stamp on the receipt that reads "Received Prior to Validation Date." The trial court inferred from this stamp that the payment must have been received no later than January 24. Mr. Richards also testified that the dates on the cash registers are moved forward in the afternoon. The trial court could reasonably conclude from this evidence, as it did, that the purchase price was timely paid on January 24. Since this finding is supported by sufficient evidence, we may not disturb it on appeal. *See, e.g., Nelson–Bey v. Robinson,* 408 A.2d 999, 1001–1002 (D.C.1979); D.C.Code § 17–305(a) (1981).

### IV

In sum, we hold that the report of the tax sale was timely filed with the Recorder of Deeds, and that the trial court's finding that the purchase price was paid in full within five days after the tax sale had adequate evidentiary support. On these two matters we affirm the rulings of the trial court. This case is remanded for further proceedings with respect to the change of address issue, in accordance with *Robinson v. Kerwin, supra.* In making its findings, the trial court on remand may base them on the existing record, or it may in its discretion receive additional evidence.

*Affirmed in part, remanded in part.*