**James D. KEATTS, et al., Appellants,**

v.

**Jack ROBINSON, et al., Appellees.**

**No. 90–688.**

District of Columbia Court of Appeals.

Argued March 12, 1991.
Decided April 18, 1991.

Jeffry A. Kappstatter and Leonard C. Collins, Washington, D.C., for appellants.

Martin B. White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, were on the brief, Washington, D.C., for appellee District of Columbia.

Margaret A. Beller, Washington, D.C., for appellees Jack Robinson, Thomas Robinson, and William Robinson.

Before BELSON, STEADMAN and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

This case concerns a tax sale of real property in 1979. It arises out of unpaid 1978 real estate taxes. On September 19, 1985, the trial judge remarked to counsel that "I dreamed last night that this case had been settled." Unfortunately, that is still a dream.

I

The factual background of this controversy was described in some detail in *Keatts v. Robinson,* 544 A.2d 716 (D.C. 1988) (*Keatts I*). From 1973 to 1976, appellant Keatts, who owned real estate in the District, lived in Chevy Chase, Maryland. In November 1976 he moved to Crofton, Maryland. At the time of his move, he filed a change of address form with the post office. A tax bill for his 1976 taxes which was mailed to his Chevy Chase address was therefore duly forwarded to him in Crofton. Keatts testified that when he paid this bill in March 1977, he enclosed with his check a written notice of the change in his address.

Thereafter, Keatts never received another tax bill, and he failed to pay his real estate tax for the second half of 1978. As a result, in January 1979, the property was sold to the Robinsons at a public tax sale for $478.

Although tax bills were apparently mailed to Keatts at his former Chevy Chase address even after he had moved to Crofton, there was some evidence that the Department of Finance and Revenue (DFR) was aware of his new address. Less than one month after the tax sale, the DFR sent an "Income–Expense Form" to Keatts in Crofton. The computer-printed address on the form was the outdated one in Chevy Chase, but the Crofton address was handwritten on the side. The envelope bore Keatts' Crofton address. At trial, Keatts also introduced into evidence a DFR mailing list on which his former Chevy Chase address was printed out, but on which his Crofton address was handwritten in red ink underneath with the notation "New Address."

In *Keatts I,* we described the ensuing events as follows:

After the tax sale, Keatts and his co-owners had two years to redeem the property by paying all back taxes, penalties, and other costs. D.C.Code § 47–1005 (1973). Shortly before the expiration of the two-year period, the DFR mailed Keatts a notice that his right of redemption would soon terminate. Unfortunately, this notice was also mailed to Chevy Chase, and the post office returned it to the DFR because Keatts' forwarding notice had expired. Mr. [Alfred] Richards, the DFR assessment chief, testified that when mail such as this is returned, personnel in his division customarily look in the District of Columbia, suburban Maryland, and suburban Virginia telephone directories to locate the owner's address. In this instance, however, no such address was found, and the notice was simply remailed—to

Chevy Chase. The redemption period then expired, and the District issued a tax deed to the Robinsons.

544 A.2d at 717–18 (footnote omitted).[1]

Keatts filed suit in the Superior Court to set aside the tax sale. His principal claim was that the DFR had failed to send tax notices to his last known address as recorded in the real estate assessment records. *See* Regulation 74–35, § 112(c), 21 D.C. Reg. 1651 (1975). The trial judge upheld the validity of the tax deed. He found that Keatts had failed to prove that he had notified the DFR of his change of address, and that a change made to the mailing list for Income–Expense Forms "does not constitute a change in record address of the property owner."

Keatts then filed his first appeal to this court. After discussing the evidence and the relevant precedents, we remanded the case to the trial judge to determine whether the DFR knew or should have known of Keatts' move, and whether the agency should have sent notices of Keatts' right to redeem the property to the Crofton address. Specifically, the judge was directed to decide whether the DFR

> has a duty to check its own records for evidence of a taxpayer's correct address. To resolve this question, the trial court must balance the burden that such a procedure would place on the District against the reasonableness of a taxpayer's expectation, unless otherwise informed, that the Department has the correct address for all purposes if the Department mails some notices to the proper address.

*Keatts I, supra,* 544 A.2d at 720 (quoting *Robinson v. Kerwin,* 454 A.2d 1302, 1307 (D.C.1983)). On remand, without conducting an evidentiary hearing or considering the affidavit proffered by appellant Keatts, *see* n. 1, *supra,* the trial judge again sustained the validity of the challenged tax

deed. Keatts has again appealed and, unfortunately, we must remand once again.

## II

Following our decision in *Keatts I,* the trial judge failed fully to perform or explicate the balancing ordered by this court. Rather, he issued additional Findings of Fact, based on the original record, which principally included the following:

1. the judge did not credit Keatts' testimony to the effect that he gave the DFR a written notice of change of address along with his property tax payment in 1977;

2. the judge found that "of all the mailings by the [DFR] to plaintiff, only one was returned undelivered," and that the DFR "did not know, nor should it have known, that plaintiff moved to a new address;"[2] and

3. the judge concluded that Keatts' insistence that he received no tax bills in 1978, 1979 and 1980 "made any expectation that the DFR had his new address not only unreasonable but incomprehensible."

In making the finding that the DFR's mailings to Keatts' former address in Chevy Chase were not returned as undeliverable, the judge evidently misapprehended the record. There was no evidence presented to that effect, nor was it claimed by the DFR representative, Alfred Richards, that any record of such returned mailings is made or retained. Indeed, Mr. Richards testified that by the time of trial in 1985, the DFR had disposed of its copies of the tax bills that had been mailed to taxpayers. With commendable candor, counsel for the District conceded at argument that the judge's finding that mail to Chevy Chase was not returned by the post office

---

1. Following our remand, Keatts filed an affidavit in the trial court with attachments showing that his name (together with his new address) continued to appear in the local directories after his move. The trial judge, however, decided the case on the original record and did not consider the affidavit.

2. The judge also wrote that "the fact that mailings to [the Chevy Chase address] were not returned, as undelivered ... demonstrates that the procedures employed by DFR were reasonably calculated to notify plaintiff of his delinquencies."

had "serious weaknesses."[3] The unsupported finding about non-return of mail was repeated several times in the judge's order, and was evidently central to his disposition of the case.

■ Since the judge did not conduct the balancing specified in *Keatts I*, and since the case must therefore be remanded once more, we submit a few additional observations regarding the weighing process. With respect to the reasonableness of Keatts' expectation, we agree with the trial judge that Keatts' non-receipt at his Crofton address of tax bills for three separate years is a significant factor in the equation. That a taxpayer overlooked his responsibility to pay taxes or to obtain tax returns, however, does not automatically validate the forfeiture of his property. Lesser sanctions, such as a requirement that he pay interest and penalties on the amounts owed, may often be sufficient. It is undisputed that Keatts did receive an income and expense statement at his Crofton address, and Keatts contends that this could reasonably lead him to believe that the DFR knew that he lived there. As we noted in *Keatts I, supra*, 544 A.2d at 721 n. 6, "[t]he record in the instant case ... is likewise devoid of evidence that the DFR provides any information to property owners on how to effect a change of a record address."[4] Finally, if the trial judge's rejection of Keatts' testimony that he provided written notice to the DFR in 1977 of his change of address was based in part on the judge's misapprehension regarding the non-return of mail to the Chevy Chase address, the judge should also consider these portions of the record which are arguably consistent with Keatts' claim.[5]

Turning to the question whether requiring the District to check its own records would be unduly burdensome, we note that Mr. Richards testified that the DFR's records are computerized, and that the Office of Assessment (which mails income and expense statements) utilizes the same computer as the Assessment Services Division. Indeed, the following colloquy took place between the judge and Mr. Richards at trial:

THE COURT: So, if one office in your department mails to a certain address, then anybody else in your department would mail to that same address because both of them would come from the computer, is that right?

THE WITNESS: That's right, your honor.

Mr. Richards also stated that "[w]e only have one record to go for mailing addresses for our tax papers, and that has been since probably 1958." He insisted, on the other hand, that accountants and attorneys made frequent requests that income and expense forms or notice of assessment changes be mailed to them, and that the record address is not altered when such a request is made.[6]

---

3. The judge's finding that Keatts' testimony was not credible immediately followed one of the references in his written decision to his belief that mailings to Chevy Chase had not been returned. Although there were other reasons to question the plaintiff's reliability, it is possible that the judge's apparent misapprehension as to the non-return of mail was a factor in his assessment of Keatts' credibility. Since there was also some corroboration in the DFR's records of Keatts' claim that he had provided his new address, the judge may wish to revisit the credibility finding.

4. Mr. Richards testified that until 1977 or 1978, this could be accomplished by telephone, but that since then, the DFR has required such a change to be in writing.

5. The notation on the DFR computer printout in which the Crofton address appears in red hand-writing begins with the words New Address. Mr. Richards testified that income and expense statements are often sent to lawyers, accountants, or real estate representatives, and that the notation in red could have resulted from a request to send these statements to such an individual. The Crofton address, however, was Keatts' own, and the record does not readily appear to reflect any reason for him, or for anyone acting in his behalf, to request that only income and expense statements be mailed to the Crofton address and that other mail continue to be directed to his former address in Chevy Chase.

6. In Mr. Richards' words, "we would be damn sure wild if we changed every one that ever called, that is, every one who ever called in on the phone and asked for a change ... [O]nly if somebody asks that their [sic] mailing address be changed would we change it."

In any event, specific findings must be made by the trial court with respect to the burden on the DFR, if any, which would be generated by a requirement that the agency check its own records in a situation such as the present one. We do not know, for example, how frequently final notices to the taxpayer of his or her right to redeem the property are returned in the mail as undeliverable.[7] If this only occurs ten times per year, the burden would be minimal in comparison with the interests at stake. The situation would be entirely different, on the other hand, if such returns occurred twenty times a week. There is likewise no finding as to the number of different offices within DFR in which record checks would have to be made, or as to the time that such checking would be likely to consume. These examples are illustrative, not exhaustive. Without the relevant information, the court cannot effectively perform the balancing which we ordered in *Keatts I*. If the present record is inadequate to make the necessary findings, further evidence must be taken.[8]

For the foregoing reasons, the order appealed from is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**7.** Counsel for the District conceded at argument that in the great majority of cases, the property is redeemed before the sale becomes final.

**8.** Given the District's representation that DFR representatives checked local telephone directories, the trial judge should give appropriate consideration on remand to Keatts' proffered evidence that he was listed in the local suburban telephone directory even after he moved to Crofton.