**Elliot B. MALONE, Appellant,**

v.

**Jack ROBINSON, et al., Appellees.**

**No. 89–CV–1546.**

District of Columbia Court of Appeals.

Submitted June 5, 1991.
Decided Aug. 21, 1992.

---

Charles A. Brady, Washington, D.C., filed a brief, for appellant.

Margaret A. Beller, Washington, D.C., filed a brief, for appellees.

Before STEADMAN and SCHWELB, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

Appellant Elliot Malone challenges a decision of the trial court granting appellees Robinsons' suit to quiet title in a residence, inherited by Malone from his deceased parents, and purchased by the Robinsons at a tax sale. Appellant bases his challenge in significant part on the District's failure to take any further action to furnish notice of the expiration of the two-year redemption period after the District's official notice of the expiring redemption period, sent by certified mail, was returned by the postal service as "unclaimed." Against the backdrop of the constitutional issues presented by a contrary construction of the regulation, we construe the D.C. regulation providing that a record owner "be notified, by certified or registered mail, of the final date by which he must redeem his property," 9 DCMR § 317.3 (1982), to require the District to take some reasonable additional action to contact the record owner if the notice is returned unclaimed.

## I

The owners of record, John and Fonnie Malone, died in 1976, leaving their son, Elliot, as sole heir and executor. Elliot paid off the mortgage in 1978. He testified that he resided in the home for four years after the death of his parents but subsequently found lodging with friends in Montgomery County in order to be near his place of employment. He continued to receive mail at the District home, checking at least once a week. He did not think it was necessary to have the property formally recorded in his name.

Mr. Malone testified that in December 1982 he received a notice of a registered[1] letter addressed to his parents. He went to the post office with identification and a letter of administration but the post office would not release the letter to him. In January 1984, he received a tax bill and he went to the District's Department of Finance and Revenue (hereafter "Department" or "DFR") to pay the amount of $1,471.20. In 1985, he paid taxes in the amount of $1,639.74. In 1986, he paid taxes in the amount of $1,491.00. He testified that he was told by a tax clerk that the amounts were applied to the earliest existing due taxes.

Meanwhile, on January 23, 1981, some two years before Mr. Malone received the notice of a certified letter addressed to his parents, the residence was sold to Mr. Robinson at a tax sale for unpaid 1980 taxes.[2] The tax deed was executed on June 17, 1986.[3]

Mr. Malone testified that the first knowledge that he had that the property was no longer his came in July of 1986 when Mr. Robinson pinned a copy of the tax deed on his door. Mr. Malone denied having received a notice of expiring redemption. Documentary evidence was introduced at trial showing that a letter dated December 1, 1982, headed "Notice of Expiring Redemption Period for the January 1981 Real Estate Sale" and sent by certified mail to the Malones, was returned to the Department marked "unclaimed." The record does not indicate whether the Department made any further effort to contact the Malones.

The files before us show three further notices of the expiring redemption period, dated September 13, 1984, February 12, 1985, and June 12, 1985, sent to a mortgagee of the property, explaining that the residence had been sold, that the two-year redemption period had expired in January 1983, but that "in light of a recent court decision" the mortgagee might redeem the property by paying the amount necessary to redeem within thirty days. A returned letter from the financial institution, dated June 26, 1985, advised the government that the mortgage was paid off in 1978.

## II

### A

Appellant contends that he was deprived of his property without due process of law because he did not receive notice as required by statute.[4] The funda-

---

1. The return receipt shows that the letter actually was sent by certified mail.

2. At trial, the District did not produce evidence that it had mailed to the property address the delinquent tax bills advising of the impending tax sale.

3. Appellant questions whether the District strictly complied with the statutory requirements when it issued the tax deed more than five years after the tax sale. The statute states only that the tax sale purchaser must *apply* for the tax deed within five years. D.C.Code § 47–1304 (1990). Here, the tax deed stated that the appellee complied with this requirement, and appellant has not pointed to any evidence to the contrary.

4. Appellant also seems to invoke an estoppel argument based on the District's acceptance of tax payments from him after the redemption period had expired. Estoppel against the District, however, cannot affect appellee's rights as the purchaser at the tax sale, which accrue upon expiration of the redemption period. D.C.Code § 47–1304. *See Industrial Bank of Washington v. Sheve,* 307 F.Supp. 98 (D.D.C.1969); *District of Columbia v. All of Lot 9, Square 5148,* 110 Daily Wash.L.Rptr. 469 (D.C.Super.Ct. March 4, 1982); *cf. Robinson v. Hopkins,* 445 A.2d 958 (D.C.1982).

   Appellant's actions, however, may color his situation in a broad, equitable sense. We take no position on any rights appellant may have to a refund of those taxes from the District.

mental, constitutional right to the preservation of one's property, as well as one's life and liberty, requires strict adherence to due process requirements. The power to convey property for nonpayment of taxes can be validly exercised only by strict compliance with the relevant statutes and regulations. *Frassetto v. Barry*, 497 A.2d 109, 113 (D.C.1985); *Boddie v. Robinson*, 430 A.2d 519, 522 (D.C.1981); *Watson v. Scheve*, 424 A.2d 1089, 1092 (D.C.1980). Thus, if the District fails to comply with the statute and regulations, the sale is invalid and must be set aside. *Keatts v. Robinson*, 544 A.2d 716, 719 (D.C.1988) (*Keatts I*); *Boddie, supra*, 430 A.2d at 521–22.

■■■■ Prior to a tax sale, the District must send the record owner notice of delinquency and must advertise in two newspapers of general circulation that the property will be sold. D.C.Code §§ 47–1301, –1302 (1990). The statute also provides that the owner of real property sold for nonpayment of delinquent taxes has the right to redeem the property at any time within two years of the sale. D.C.Code §§ 47–1304, –1306(a) (1990). In furtherance of this statutory right of redemption, the Council of the District of Columbia in 1975 adopted Regulation 74–35, which required the District to notify property owners of record of the impending expiration of the redemption period.[5] Regulation 74–35 provides:

> Not less than thirty (30) days prior to the expiration date of the two year redemption period, the record owner shall be notified, by certified or registered mail, of the final date by which he must redeem his property.

9 DCMR § 317.3 (1982).[6] This court previously has stated that actual notice of the expiration of the redemption period is not mandated either as a matter of due process or of construction of the regulation, and that notice by mail to the record owner generally satisfies due process commands. *Boddie, supra*, 430 A.2d at 521 n. 4; *see also Coleman v. Scheve*, 367 A.2d 135, 137 n. 1 (D.C.1976); *Dodson v. Scheve*, 339 A.2d 39, 40 (D.C.1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976). The Department also has no statutory or constitutional duty to update its records from probate records. *E.g., Boddie, supra*, 430 A.2d at 521 n. 4; *Moore v. District of Columbia*, 332 A.2d 749, 751 (D.C.1975) (per curiam).

At the same time, we have never before addressed, and indeed have expressly reserved for future resolution, *Boddie, supra*, 430 A.2d at 522 n. 4, the question we face today: whether the regulatory requirement that a record owner "be notified, by certified or registered mail, of the final date by which he must redeem his property" commands that the Department take some additional step to reach a property owner when the post office returns as unclaimed a notice of the expiring redemption period, so that the Department knows as a fact that the required formal notice was *not* received by the property owner. Because a construction of the regulation that did not incorporate this requirement would raise constitutional problems in light of the Supreme Court's decision in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and this court's decision in *District of Columbia v. Mayhew*, 601 A.2d 37 (D.C.1991), we hold that such an additional step is required by the regulation.

**B**

■■■■ When a notice of expiring redemption period informing the record owner that

---

**5.** The Council adopted the regulation pursuant to then D.C.Code § 47–641(c) (1978 Supp.) (recodified at D.C.Code § 47–820(c) (1990)), which provides:

> The Council may adopt regulations concerning the assessment and reassessment of real property and matters relating thereto which shall be consistent with the provisions of this chapter and other applicable provisions of law.

The regulation made mandatory the prior administrative custom of notifying property owners of the impending expiration of the statutory redemption period. *See Boddie, supra*, 430 A.2d at 521 & nn. 2–3.

**6.** The notice of expiring redemption period in this case was mailed when the 1982 version of the District of Columbia Municipal Regulations was in effect. The regulations have since been updated, but § 317.3 has not been changed.

he could shortly lose his interest in his property is returned as unclaimed, the District knows that, as to that particular notice, the record owner may be no better off than if the notice had never been sent. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Applying the principle of *Mullane* to the context of tax sales, the Supreme Court in *Mennonite, supra*, held that notice by publication or posting did not provide a mortgagee of real property with constitutionally adequate notice of a proceeding to sell the property for nonpayment of taxes. 462 U.S. at 798, 800, 103 S.Ct. at 2711, 2712. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable." *Id.* at 800, 103 S.Ct. at 2712 (emphasis in original); [7] *see also Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 491, 108 S.Ct. 1340, 1348, 99 L.Ed.2d 565 (1988) (Oklahoma's "nonclaim statute," which required the executor of an estate to give notice by publication to creditors of the pending disposition of the estate and generally barred creditors' claims against an estate if not presented within two months of publication, offended the Due Process Clause with respect to creditors whose identity was "known or reasonably ascertainable").

This court recently has had occasion to apply these principles in the context of a tax sale whose validity was challenged on the ground that a trustee under a deed of trust did not receive constitutionally ade-

quate notice of proceedings connected with a tax sale. *Mayhew, supra*, 601 A.2d at 43–45. In *Mayhew*, the public record contained the names, but not the addresses, of the trustees under the deed of trust for the property. *Id.* at 40. After the property owner failed to pay taxes on the property, the District mailed notice of the tax sale to the property owner and gave what purported to be proper notice by publication. The District also mailed the required notice to the property owner informing it of the impending expiration of the redemption period. Subsequently, the District attempted to contact the named trustees, whose names and telephone numbers were in the Washington, D.C. telephone directory. A District official reached one of the trustees by telephone, asking him simply if he had any connection with property on 14th Street, to which the trustee responded no. The trial court in *Mayhew* found that there was no evidence what else, if anything, the District official asked the trustee, "nor any evidence as to whether she asked him if he was a trustee." *Id.* at 41. The District made no other effort, by mail or otherwise, to notify the trustee of the expiring redemption period.

Leaving open the question when due process required the District to provide the trustee with "notice by mail or its equivalent," the *Mayhew* court concluded that the District never gave adequate notice to the trustee. *Id.* at 43–44. Although the trustee's address was not part of the public record, his name appeared on the recorded deed and his business and home addresses were listed in the Montgomery County, Maryland and District of Columbia telephone directories. On these facts, this court found that the trustee's address was "reasonably ascertainable," and that even the telephone call to the trustee:

> was not adequate inquiry excusing the failure to notify [the trustee] by mail or personal service at the listed addresses.

7. The *Mennonite* Court assumed that although the mortgage on file identified only the mortgagee's name and the county in which it was located, the mortgagee's address "could have been ascertained by reasonably diligent efforts." *Id.* 462 U.S. at 798 n. 4, 103 S.Ct. at 2711 n. 4.

With respect to mortgagees whose interests were not publicly recorded, the Court suggested that a state still was constitutionally required to take reasonable but not "extraordinary" steps to determine their identities and whereabouts. *Id.*

Without further inquiry by telephone or otherwise, the District could not simply assume that [the trustee] it spoke with was not the individual named on the deed of trust. A single phone call which, as the [trial] judge noted, did not even call [the trustee's] attention to the fact he was listed as a trustee on the deed did not relieve the government of its duty of notice under *Mennonite.*

*Id.* at 44–45.

## C

Permitting the District to issue a valid tax deed where it knew that the property owner had not received the required official written notice of the expiring redemption period would, at the very least, raise questions as to the constitutionality of the District's actions, given that "constructive notice by publication is [in]sufficient to inform interested parties, at least 'those who could be notified by more effective means such as personal service or mailed notice.' " *Id.* at 43 (quoting *Mennonite, supra,* 462 U.S. at 795, 103 S.Ct. at 2709–10). As noted previously, we need not decide precisely what the Due Process Clause, by itself, might require the District to do when an official notice of expiring redemption period is returned unclaimed, and thus the District knows that, as to that particular notice, the property owner may be in an even worse position than one given notice only by publication. Rather, mindful of these constitutional considerations,[8] we conclude that the D.C. Council's regulatory requirement that record owners "be notified" of the expiring redemption period embodies a requirement that the Department undertake "reasonable efforts," *Mayhew, supra,* 601 A.2d at 44, to provide actual notice to the record owner when, because of the return of the required notice of expiring redemption period marked "unclaimed," the Department knows that the record owner did not receive that notice required by the regulation.[9]

By mandating that "the record owner [ ] be notified, by certified or regular mail, of the final date for redeeming the property," the Council indicated the particular importance it attached to this potentially final opportunity for people to save their property.[10] The return of the certified notice marked "unclaimed" should have been a red flag for some further action. *See, e.g., Giacobbi v. Hall,* 109 Idaho 293, 707 P.2d 404, 407 (1985) (construing tax sale statute to mean that "whenever mail notice is undeliverable, a reasonable search and inquiry will be done before notice is published");

---

**8.** It is a well-settled principle of statutory construction that, when possible, a statute should be construed to protect its constitutionality. *See, e.g., Dove v. Dairyland Ins. Co.,* 562 A.2d 1199, 1201 n. 8 (D.C.1989); *Gay Rights Coalition v. Georgetown Univ.,* 536 A.2d 1, 16 (D.C.1987) (en banc); *Nova University v. Educational Inst. Licensure Comm'n,* 483 A.2d 1172, 1179 (D.C. 1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 45.11 (5th ed. 1992). There is no reason not to apply this principle to a regulation, particularly one adopted by the District's legislative body, the District of Columbia Council.

In this regard, we have followed a similar approach in the related context of notice by service of process. *See Frank Emmet Real Estate, Inc. v. Monroe,* 562 A.2d 134 (D.C.1989) (recognizing "significant constitutional overtones" in construing statute permitting posting).

**9.** Had the notice of expiring redemption period not been returned, the District's mailing of that notice would have comported with the Council's regulation and been constitutionally adequate, since service by mail is reasonably calculated to give notice in most circumstances. *Boddie, supra,* 430 A.2d at 521 n. 4; *Coleman, supra,* 367 A.2d at 137 n. 1; *Dodson, supra,* 339 A.2d at 40; *see also Mennonite, supra,* 462 U.S. at 798–99, 103 S.Ct. at 2711–12; *Mullane, supra,* 339 U.S. at 318–20, 70 S.Ct. at 659–60.

The requirement that the Department take reasonable efforts to notify the record owner when the notice of expiring redemption is returned unclaimed also presumes that the notice was not returned unclaimed due to a deliberate refusal to accept delivery. In that or an analogous situation, the property owner is hardly in any position to take advantage of any failure by the District to take further steps. *See Helland v. Larson,* 138 Ill.App.3d 1, 92 Ill.Dec. 646, 485 N.E.2d 457 (1985); *Red Elk v. Stotts,* 111 F.R.D. 87 (D.Mont.1986).

**10.** The fact that the Department had some weeks previously sent by ordinary mail an unreturned letter explaining that the redemption period would soon expire and that an official notice of the expiring redemption period would follow cannot serve as a substitute for the required official redemption notice.

*Tracy v. County of Chester, Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985) (where mailed notice not delivered because of inaccurate address, state must make reasonable additional efforts to ascertain the address of the owner); *In re Tax Claim Bureau of Beaver County*, 143 Pa. Cmwlth. 659, 600 A.2d 650 (1991) (when certified mailing returned as undelivered, tax bureau was "put on notice" of need to search for correct address); *In re Campbell*, 574 So.2d 539 (La.Ct.App.), *writ denied*, 577 So.2d 34 (La.1991) (same); *cf. Wells Fargo Credit Corp. v. Ziegler*, 780 P.2d 703, 705 (Okla.1989) (County Treasurer failed to exercise reasonable diligence in notifying mortgagee of tax sale when Treasurer undertook no additional steps to notify the mortgagee even though neither the notice sent by certified mail nor the requested return receipt was returned). "That a taxpayer overlooked his responsibility to pay taxes ... does not automatically validate the forfeiture of his property." *Keatts v. Robinson*, 589 A.2d 430, 433 (D.C.1991) (*Keatts II*).

**D**

As we noted in *Mayhew, supra,* "the issue boils down to whether the District made reasonable efforts to locate the [record owners] to give them the required notice." 601 A.2d at 44. Resolution of this issue includes a consideration of the practicalities and realities of the Department's operations. *See Keatts II, supra,* 589 A.2d at 435; *see also Tulsa Professional Collection Servs., supra,* 485 U.S. at 489, 108 S.Ct. at 1347 ("consideration should be given to the practicalities of the situation and the effect that requiring actual notice may have on important state interests"). Our

decisions in *Keatts I* and *Keatts II, supra,* and in *Robinson v. Kerwin*, 454 A.2d 1302 (D.C.1983), provide some guidance in this regard. In both *Keatts* cases and in *Kerwin*, the District mailed notices to the property owner's former address, despite some evidence that the owner had provided the Department with its current address.[11] This court remanded the cases for the trial court to consider in the first instance the respective duties of the District and the property owner under the statute and regulations to update real estate records to include an accurate mailing address for the property owner. *Keatts I, supra,* 544 A.2d at 720; *Kerwin, supra,* 454 A.2d at 1307.[12] So here, although the Department must take some reasonable step to notify the record owner of the expiring redemption period, in determining what action to take it can balance the burden that such action places on the Department against the likelihood that such action will result in giving actual notice to property owners and the duty of the property owner to keep the Department advised. Indeed, the Department itself has the authority to interpret Regulation 74–35 reasonably to prescribe an appropriate additional step, which would be entitled to due deference.

Our interpretation of the regulation is not inconsistent with prior decisions of this court in which we upheld the validity of tax sales where heirs or devisees of the record owner had not received notice of the tax delinquency or the expiration of the redemption period and notices had been returned unclaimed. *Moore v. District of Columbia*, 332 A.2d 749 (D.C.1975), on which the trial court relied, was a brief per curiam opinion that focused primarily on what notice was due prior to the tax sale

---

11. In *Kerwin,* the property owners did not file a change of address form with the Department, but they testified that they twice informed the Department of their new address, and the Department mailed income tax forms to the owners' new address. *Kerwin, supra,* 454 A.2d at 1303, 1307 n. 12. In *Keatts,* the Department mailed an "Income–Expense Form" to the owner's new address, and the property owner introduced into evidence a Department mailing list on which the property owner's former address was printed but which also contained a handwritten notation of his new address. *Keatts II, supra,* 589 A.2d at 431.

12. Indeed, in *Kerwin* the notice of expiring redemption period was returned to the Department marked "moved: not forwardable." Department records showed that an employee unsuccessfully attempted to find a telephone listing for the property owners, though the owners were listed in the District telephone directory at the time. The parties did not address in the appeal the constitutional adequacy of the District's efforts after the notice of expiring redemption period was returned, and this court similarly focused more generally on the Department's duty to check its records for the owner's correct address. *Id.* at 1306–07.

and mentioned the return of the registered notice of expiring redemption period only in a footnote. The brevity of the court's discussion of the issue presented in this appeal is particularly unsurprising since, at the time the tax deed was issued, the D.C. Council had not yet issued its Regulation 74–35, which signified the importance that the Council attached to providing notice of the expiring redemption period. Of some significance as well, *Moore* was decided before the Supreme Court's decision in *Mennonite, supra,* and hence did not have squarely before it the Court's articulation of the constitutional obligation to undertake reasonable efforts to apprise interested parties of events in the tax sale process that could extinguish their property interests. *Cf. Kleinbart v. United States,* 604 A.2d 861, 870 (D.C.1992) (citing *Frendak v. United States,* 408 A.2d 364 (D.C.1979)) (strict adherence to *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971) not required where intervening constitutional rulings require a change in prior law). We therefore conclude that *Moore* does not control the disposition of an issue that this court, subsequent to *Moore,* recognized was open for resolution. *Boddie, supra,* 430 A.2d at 522 n. 4. Likewise, this court's decision in *Watson v. Scheve,* 424 A.2d 1089 (D.C. 1980) is not inconsistent with this decision. In *Watson,* the District sent two additional notices of expiring redemption, one of which reached the devisee, after the original notice sent by certified mail had been returned unclaimed. 424 A.2d at 1091. Thus, the District in *Watson* took the kind of reasonable additional steps that could have been taken in the instant case.

The trial court, concluding that *Moore* was controlling, did not have occasion to explore the application of the regulation as interpreted in this opinion. Following our practice in *Keatts I, supra,* and *Kerwin, supra,* we accordingly reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*So ordered.*