OPINION OF THE COURT
Joan A. Madden, J.
In this CPLR article 78 proceeding, petitioner, a tenured mathematics teacher of 28 years, seeks to annul the determination of respondents Board of Education of the City School District of the City of New York and Joel I. Klein (collectively the Board of Education) which terminated his employment; petitioner also seeks retroactive reinstatement with full back salary, including interest, and all benefits. For the reasons delineated below, the petition is granted.
The following facts are not disputed unless otherwise noted. By letters dated December 20 and 21, 2006, the Board of Education advised petitioner that “a serious allegation has been made against you,” and “[p] ending the outcome of the investigation . . . you are reassigned” to “Region 8 Human Resources.” These letters were hand-delivered to petitioner at work and neither letter has an address for petitioner.
On May 11, 2007, while petitioner was working at the Region 8 Human Resources Center (the reassignment center), he received by hand delivery from the Board of Education a document entitled “Notice of Charges” (first notice), which stated as follows:
“In view of your unprofessional conduct while a teacher at Automotive High School, an Empowerment School located in Brooklyn during 2005-2006 and 2006-2007 school years, the following charges are being preferred:
“1. Just Cause for disciplinary action under Education Law § 3020-a;
“2. Incompetent and inefficient service;
“3. Conduct unbecoming Respondent’s position, or conduct prejudicial to the good order, efficiency or discipline of the service;
“4. Substantial cause rendering Respondent unfit to perform his obligations properly to the service;
*686 “5. Violation of Chancellor’s Regulation A-421;
“6. Violation of Chancellor’s Regulation A-420;
“7. Insubordination;
“8. Neglect of duty; and
“9. Just cause of termination.
“By this notice you are hereby informed of the nature of the complaint. I will be preferring and filing the above charges. You will be informed of the procedures involved in the Trial of Charges.”
The Board of Education submits affidavits of service that the first notice was personally delivered to petitioner at work, and that it was also sent via certified and regular mail addressed to petitioner at “428 Worthman Avenue, Apt. No. 1, Brooklyn, New York, 11207.” Petitioner concedes he received the hand-delivered copy, but denies receipt of the certified and regular mailed copies. He explains that he last resided at Worthman Avenue more than five years ago, and since 2003, he had resided at his current address, 22 Covert Street, Apt. 3R, Brooklyn, New York 11207. While petitioner asserts that the Board of Education’s Office of Salary Services lists his correct address at 22 Covert Street, the Board of Education asserts that it used the Worthman Avenue address “because that was the address BOE [Board of Education] had in its HRS [human resource system] for the petitioner in May of 2007.”
On May 16, 2007, the Board of Education issued a “Notice of Determination of Probable Cause on Charges Brought Against Tenured School District Employee, Section 3020-a Education Law” (second notice) addressed to petitioner at the Worthman Avenue address. The second notice advised that the Board of Education “has found there is probable cause on the attached charges preferred against you,” and that “[w]ithin ten days of receipt of these charges, you must elect to request a hearing before an impartial hearing officer, or [you] will waive your right to such a hearing.” The second notice also advised that if petitioner did “not request a hearing to contest these charges, the maximum penalty that will be imposed will be termination.” The notice included a form for requesting a hearing and detailed 12 separate factual “Specifications,” in which petitioner allegedly “rendered incompetent and inefficient service, engaged in verbal abuse and unprofessional conduct.”[1]
The Board of Education asserts that it sent the second notice to the Worthman Avenue address by certified and regular mail, *687 and that the regular mail copy was not returned and the certified mail copy was returned “unclaimed.” Petitioner asserts *688 that he never received the second notice since it was not sent to his correct address, and as a result he could not have submitted a timely request for hearing.
*687 “Specification 1: On or about December 13, 2005, Respondent: a) told Student A in words to the effect of leave the class because he didn’t like her; b) pointed at Student A through a window and laughed at her.
“Specification 2: On or about March 29, 2006, Respondent failed to call in when he was absent.
“Specification 3: On or about September 5, 2006, Respondent failed to attend his 9th period class after being told to do so by Assistant Principal Dietrich.
“Specification 4: On or about September 7, 2006, Respondent smoked a cigarette on school premises in violation of Chancellor’s Regulation C-810.
“Specification 5: On or about September 7, 2006, Respondent told students words to the effect of: a) You are getting me aggravated; b) If you don’t want to be here, don’t come to school and aggravate me; c) See what happens when you do the wrong thing; d) There’s always a method to the madness; e) If I had a better classroom, I might be able to deal with it; f) I cannot work like this either.
“Specification 6: On or about September 8, 2006, Respondent was dismissed from a disciplinary meeting because of behavior indicative of intoxication.
“Specification 7: Throughout the fall of 2006 Respondent: a) mumbled under his breath; b) was jittery and jumpy; c) appeared unfocused during class.
“Specification 8: On or about September 26, 2006, Respondent rendered an unsatisfactory lesson as observed by Assistant principal Eileen Dietrich in that Respondent failed to: a) properly plan and prepare for the lesson; b) circle the room to assess student work and answer questions; c) use a closure activity; d) maintain a level of academic rigor and content appropriate for the students; e) follow through to have all the students work in groups; f) focus on the entire class; g) immediately address a student error; h) teach the whole period; i) engage students in the lesson; j) properly pace the lesson; k) use a proper ‘Do Now’ activity; 1) properly call on students; m) maintain control of the class; n) pay attention to routine matters.
“Specification 9: On or about October 12, 2006, Respondent failed to appear for a medical examination and failed to contact the office to notify anyone.
“Specification 10: On or about December 12, 2006, Respondent told a student words to the effect of I don’t need this disabled mind in my classroom.
“Specification 11: On or about November and/or December, 2006, Respondent ignored directives from a supervisor to: a) tutor students; b) turn in lesson plans; c) attend a meeting with the supervisor as scheduled.
“Specification 12: On or about fall of 2006, Respondent was teaching the wrong math course.”
*688 On or about August 31, 2007, Michael Best, Esq., general counsel to the Board of Education, sent petitioner a “Notice of Inquest” by certified and regular mail to the Worthman Avenue address. The letter advised as follows:
“On May 16, 2007, you were served with Education law Section 3020-a charges by regular and certified mail. Under the law, you have ten days to request a hearing on the charges or waive your right to a hearing. We have confirmed your failure to request a hearing with the New York State Education Department. Since you have failed to request a hearing in a timely manner, your right to a hearing is deemed waived.
“For informational purposes only, you are hereby advised that the charges preferred against you are now subject to disposition at the next regularly scheduled meeting of the Panel for Education Policy to be held on September 24, 2007 at 6:00 pm at the Tweed Court House, 52 Chambers Street, New York, NY 10007.”
The Board of Education asserts that the regular mail copy of the notice of inquest was not returned, and that the certified mail copy was returned “unclaimed.” Petitioner asserts that he never received the notice of inquest since it was not sent to his correct address.
On October 12, 2007, Chancellor Joel I. Klein, Chairperson of the Panel for Education Policy, wrote to petitioner at the Worth-man Avenue address, detailing the events that occurred since the charges were preferred against him on May 16, 2007, specifically the notices sent to him and his failure to respond and request a hearing.[2] The letter advised that “[i]n a memorandum dated August 30, 2007, the Office of Legal Services notified the Panel for Educational Policy (hereinafter ‘the Panel’) that at a trial on these charges, the evidence against you would have consisted of” testimony by specific individuals as to certain conduct. The letter listed the individuals’ names, summarized the substance of their testimony, and stated that “[biased on *689 the representations of the Office of Legal Services, the Panel makes the following findings of fact,” which basically adopted the testimony as described. The letter listed the Panel’s findings[3] and stated that the Panel concluded that “effective immediately, your services with the New York City Department of Education are terminated.”
On October 18, 2007, petitioner received by hand delivery at the reassignment center, a letter from the Board of Education which stated in its entirety as follows: “Pursuant to the 3020-a disciplinary proceeding decision you are hereby terminated from your employment with the Department of Education effective October 18, 2007.” This letter was hand-delivered to petitioner at work, but was addressed to him at the Worthman Avenue address. Petitioner states that when he received the termination letter, he directly informed his union representative, John Settle, that he had been terminated and that he had never received “formal charges” or “notice of his rights under the Education Law.” Petitioner states that his union representative contacted the Board of Education to request a hearing, and that such request was denied.[4] Petitioner subsequently filed a notice of claim on January 18, 2008, and asserts that “approximately thirty (30) days have elapsed since that time and Respondents have refused to adjust such claim.”
*690 On February 15, 2008, petitioner commenced the instant article 78 proceeding, challenging the termination of his employment. Petitioner contends that the Board of Education failed to comply with the notice requirements of Education Law § 3020 (1), which provides that “[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section [3020-a].” Particularly, petitioner argues that he was not provided with the statutorily required “Notice of Charges” specifying the charges in detail, the penalty to be imposed and his rights under Education Law § 3020-a. Petitioner asserts that he was provided only with a “Notice of the Nature of the Charges, incorrectly styled as Notice of Charges,” that such document bears an incorrect address from over four years prior, and that he did not receive “anything by certified or registered mail with regard to any threatened disciplinary proceedings.”
Petitioner contends that since he was not provided with notice as to his right to request a hearing on the charges, the Board of Education’s
“unilateral determination to terminate [his] employment without the due process hearing as provided for under Education Law § 3020-a deprives [him] of property rights in his tenured position without due process of law, and is arbitrary, capricious, an abuse of discretion, a violation of lawful procedure, and a violation of the rights guaranteed to Petitioner under the due process clause of the New York State Constitution.”
Petitioner also contends that under Education Law § 3020-a (2) (d), the Board of Education is statutorily obligated to consider whether his failure to timely request a hearing is “excused.” Education Law § 3020 recognizes that a tenured teacher has a constitutionally protected property interest in his or her right to continued employment which cannot be deprived without due process. (See Holt v Board of Educ. of Webutuck Cent. School Dist., 52 NY2d 625 [1981]; Matter of Abramovich v Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979], cert denied 444 US 845 [1979]; Matter of Novillo v Board of Educ. of Madison Cent. School Dist., 17 AD3d 907 [3d Dept 2005], lv denied 5 NY3d 714 [2005]; Matter of Elmore v Plainview-Old Bethpage Cent. School Dist., Bd. of Educ., 273 AD2d 307 [2d Dept 2000].) The procedures for *691 disciplining and terminating a tenured teacher are set forth in Education Law § 3020-a. (See Matter of Pollock v Kiryas Joel Union Free School Dist., 52 AD3d 722 [2d Dept 2008]; Matter of Chawki v New York City Dept. of Educ., Manhattan High Schools, Dist. 71, 39 AD3d 321 [1st Dept 2007], lv denied 9 NY3d 810 [2007].) Section 3020-a (2) (a) provides that if disciplinary charges are to be preferred,
“a written statement specifying the charges in detail, the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and outlining the employee’s rights under this section, shall be immediately forwarded to the accused employee by certified or registered mail, return receipt requested or by personal delivery to the employee.”
Section 3020-a (2) (c) provides that “[w]ithin ten days of receipt of the statement of charges, the employee shall notify the clerk or secretary of the employing board in writing whether he or she desires a hearing on the charges.” Section 3020-a (2) (d) provides that the “unexcused failure of the employee to notify the clerk or secretary of his or her desire for a hearing within ten days of the receipt of charges shall be deemed a waiver of the right to a hearing,” and “[i]f the employee waives his or her right to a hearing the employing board shall proceed, within fifteen days, by a vote of a majority of all members of such board, to determine the case and fix the penalty, if any, to be imposed.”
Here, as a tenured teacher, petitioner was entitled to the procedural due process protections afforded under Education Law § 3020-a, as detailed above. Specifically, after the charges were submitted in writing and filed with the Board of Education and the Board of Education determined that probable cause for the charges existed, the Board was required by statute to forward to petitioner immediately, via certified or registered mail, or personal delivery, a written statement specifying the charges in detail and outlining his rights, including his right to a hearing and the maximum penalty if he did not request a hearing within 10 days. (See Education Law § 3020-a [2] [a]; Matter of Pollock v Kiryas Joel Union Free School Dist., supra; Matter of Chawki v New York City Dept. of Educ., Manhattan High Schools, Dist. 71, supra.)
Contrary to the Board of Education’s assertion, the first notice that was personally delivered by hand to petitioner on *692 May 11, 2007, did not satisfy the substantive requirements of section 3020-a (2) (a). That notice included a brief list of the charges which merely informed petitioner as to the “nature of the complaint,” but it neither specified the details of the charges, nor advised petitioner of his right to a hearing and the maximum penalty if he did not request a hearing within 10 days, as required under section 3020-a (2) (a).
The second notice dated May 16, 2007 satisfied the substantive requirements of section 3020-a (2) (a) by providing the details as to 12 separate incidents, and advising petitioner of his right to request a hearing and that the failure to do so in 10 days would result in his waiving that right with a maximum penalty of termination. That notice, however, was mailed to petitioner via certified and regular mail at the Worthman Avenue address, where petitioner claims he has not resided since 2003.[5] For that reason, petitioner asserts that he never received the second notice and was denied due process in that he did not receive notice of the charges or his right to a hearing in compliance with Education Law § 3020-a (2), since the certified mailing of the second notice was sent to an outdated and incorrect address.
The Board of Education responds that it complied with due process in that: (1) the address at Worthman Avenue was the address the Board of Education had for petitioner in its human resource system; (2) petitioner was responsible for updating his address and the Board of Education’s records indicate that he did not do so until after he was terminated;[6] (3) the certified mailings of the second notice of May 16, 2007 and the August 31, 2007 notice of inquest were returned “unclaimed”; and (4) *693 those notices were also sent to petitioner via regular mail and were not returned.
Although due process does not require actual notice before the government may extinguish a person’s property interest, “due process requires the government to provide ‘notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.’ ” (Jones v Flowers, 547 US 220, 226 [2006], quoting Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]; accord Matter of Harner v County of Tioga, 5 NY3d 136, 140 [2005]; Kennedy v Mossafa, 100 NY2d 1, 9 [2003]; Silverstein v Minkin, 49 NY2d 260, 263 [1980], rearg denied 50 NY2d 929 [1980].) In Jones v Flowers (supra) the United States Supreme Court recently held that when the government becomes aware prior to the taking that its attempt at notice has failed, due process requires the government to “take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.” (547 US at 225.)
Jones involved the certified mailing of a notice of tax sale to a property owner that was returned unclaimed. The record indicated that the property owner moved out of the house when he and his wife separated, and seven years later, the Arkansas Commissioner of State Lands sent him a certified letter as to the tax delinquency, at the address of the property; two years after that, another certified letter was sent to him at the same address, advising that his house would be sold if he did not pay his taxes. The certified letters were returned marked “unclaimed,” and the Commissioner took no further steps to notify the property owner.
The United States Supreme Court concluded that “[t]he Commissioner’s effort to provide notice to [the property owner] of an impending tax sale of his house was insufficient to satisfy due process given the circumstances of this case.” (Id. at 239.) The Court found that
“ [although the State may have made a reasonable calculation of how to reach [the property owner], it had good reason to suspect when the notice was returned that [the property owner] was ‘no better off than if the notice had never been sent.’ Deciding to take no further action is not what someone ‘desir *694 ous of actually informing’ [the property owner] would do; such a person would take further reasonable steps if any were available.” (Id. at 230 [citation omitted], quoting Malone v Robinson, 614 A2d 33, 37 [DC Ct App 1992].)
“What steps are reasonable in response to new information depends upon what the new information reveals.” (Id. at 234.)
Analyzing the “new information,” the Court in Jones reasoned that the return of the certified letters marked “unclaimed” meant either that the property owner still lived at the property but was not at home when the postal carrier called and did not retrieve the letter at the post office, or that the property owner no longer resided at that address. (Id.) Based on that information, the Court determined that several additional reasonable steps at notice were available, including resending the notice by regular mail, posting the notice on the front door or addressing otherwise undeliverable mail to “occupant.” (Id. at 234-235.)
Although Jones involves an issue of due process and notice in the context of tax sale of real property, petitioner’s protected property interest in his tenured teaching position and his right to due process are no less significant. Applying the holding in Jones, this court concludes that the second notice sent by certified mail was insufficient to satisfy due process, as once that notice was returned marked “unclaimed,” the Board of Education became aware that its attempt at notice had failed, and due process required the Board of Education to take additional reasonable steps to notify petitioner.[7] Moreover, under the circumstances presented, additional reasonable and practicable steps were plainly available.
The Education Law permits service of the notice by two methods in the alternative, by certified or registered mail, or by *695 personal delivery. (Education Law § 3020-a [2] [a].) The Board of Education utilized both methods in serving petitioner with the various notices involved in this proceeding. Specifically, the December 2006 letters initially advising petitioner of his reassignment, and the final letter in October 2007 as to his termination, were hand-delivered to petitioner at work, while all other notices in the interim period between those dates, regarding the charges, petitioner’s right to a hearing, and his having waived that right, were sent via certified and regular mail to an outdated address.
As held in Jones, when the certified mail was returned unclaimed, the Board of Education became aware that the notice was ineffective, which triggered an obligation on the Board of Education’s part to take additional steps to effect notice, by redelivering the second notice to petitioner personally at his place of work. Personal delivery at work was the one additional reasonable and practical step to effect notice, which was clearly available to the Board of Education, since the Board of Education employed petitioner at all times, had direct firsthand knowledge of his work location, and had previously effectuated service on petitioner by such means.
The Board of Education’s additional regular mailing of the notice does not alter this conclusion, in view of the circumstances presented in this proceeding. Although the Court in Jones found that one additional reasonable step addressed to the possibility that the owner had moved, was to resend the notice by regular mail so that a signature was not required, in Jones the government had no knowledge of the owner’s actual whereabouts. In sharp contrast, whereas here the Board of Education employed petitioner and knew exactly where he was working, once the certified mail was returned unclaimed, the one practicable and reasonable follow-up measure calculated to make actual notice likely, was personal delivery to petitioner at work.
The Board of Education argues that petitioner was obligated to update his address and that he did not do so until after he was terminated. The identical argument was raised and rejected in Jones, on the grounds that even if the property owner fails to comply with a statutory obligation to keep his address updated, the government cannot be relieved of its constitutional obligation to provide adequate notice. (547 US at 232.) In any event, the Board of Education does not dispute petitioner’s assertion that its Office of Salary Services lists his correct address at Covert Street.
*696 Based on the foregoing, this court concludes that the Board of Education’s determination to terminate petitioner’s employment must be annulled for not complying with the requirements of due process, and petitioner is entitled to reinstatement with back salary and benefits.
Accordingly, it is hereby ordered and adjudged that the petition is granted, and respondents’ determination terminating petitioner’s employment is annulled, and respondents shall reinstate petitioner forthwith with full salary and benefits retroactive to November 26, 2007.[8]

. The details of the specifications are as follows:

. The Board of Education does not provide an affidavit of service as to this letter, and does not otherwise indicate the manner in which it was sent or delivered to petitioner.

. The Panel found as follows:
“1. Just cause for disciplinary action under Education Law § 3020-a;
“2. Incompetent and inefficient service;
“3. Conduct unbecoming Respondent’s position or conduct prejudicial to the good order, efficiency, or discipline of the service;
“4. Substantial cause rendering Respondent unfit to perform properly his obligations to the service;
“5. Violation of Chancellor’s Regulation A-421;
“6. Violation of Chancellor’s Regulation C-810;
“7. Insubordination;
“8. Neglect of duty; and
“9. Just cause for termination.”

. The Board of Education submits an affidavit from Lisa Becker, senior counsel to the Board of Education, stating that she has “no recollection” of a conversation with petitioner’s union representative, Mr. Settle, about petitioner’s failure to respond to the disciplinary charges and a request for a hearing on his behalf. She also states that even if she had received such a call requesting a hearing on petitioner’s behalf, she would have advised Mr. Settle “to make a written application but that it would be denied as petitioner had already been terminated based on his failure to request a hearing in a timely manner.”

. Petitioner asserts that “in 2003 he informed principal Silberman and payroll secretary, Pat Wilder, that he was moving and provided the new address to Ms. Wilder.” Petitioner further asserts that the Board of Education “had notice of his correct address as early as October 2006,” as evidenced by his application for leave of absence for health reasons dated October 12, 2006, and a confidential medical report and evaluation dated November 15, 2006, both of which list his address as 22 Covert Street, 3R, Brooklyn, New York.

. The Board of Education produces a computer printout from its human resource system, indicating petitioner’s address as “428 Worthman Avenue,” as well as an internal complaint from December 2005 listing petitioner’s “home address” as “428 Worthman Avenue.” The Board of Education also submits several documents from 2006, addressed to petitioner at “428 Wort-man Avenue,” including an October 13, 2006 letter regarding his failure to appear for an October 12, 2006 medical examination.
The Board of Education notes that on October 23, 2007, “almost two weeks after his termination,” petitioner contacted the Board of Education “to change his address with the BOE system” from 428 Worthman Avenue to 22 Covert *693 Street, and that his address was “updated in the BOB system on November 7, 2007.”

. The cases cited by the Board of Education distinguishing between “unclaimed” and “undeliverable” mail, Matter of Hamer v County of Tioga (5 NY3d 136 [2005]) and Cadle Co. v Tri-Angle Assoc. (18 AD3d 100 [1st Dept 2005]), appear to be contrary to the Supreme Court’s decision in Jones v Flowers (supra). The Board of Education also cites an appellate case decided after Jones, which finds Jones factually distinguishable, Temple Bnai Shalom of Great Neck v Village of Great Neck Estates (32 AD3d 391 [2d Dept 2006] [certified mail notice as to the right to redeem was sent by the private citizen who previously purchased the tax lien; multiple mailings were sent to various potential recipients at their current and correct addresses, and were returned unclaimed only after repeated attempts at delivery; and no suggestion in the record that the potential recipients were not at home or otherwise legitimately unavailable to sign for the mailing], Iv denied 8 NY3d 813 [2007], cert denied 552 US —, 128 S Ct 1241 [2008]).

. Petitioner states that while he was terminated as of October 18, 2007, he remained on payroll until November 25, 2007.